Daniel Cooper (Bar No. 153576)
daniel@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
drev@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004 O'Reilly Avenue
San Francisco, California 94129
Tel:   (415) 440-6520
Fax:   (415) 440-4155

Attorneys for Plaintiff Orange County Coastkeeper

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a non-profit corporation,<br><br>                 Plaintiff,<br><br>        v.<br><br>DBW & ASSOCIATES, INC., a California corporation, and DBW & ASSOCIATES, INC., dba DBW Metals,<br><br>                 Defendants. | Case No. SACV-09-1063-DOC (MLGx)<br><br>Hon. David O. Carter<br><br>**CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)** |

**WHEREAS,** Orange County Coastkeeper is a non-profit corporation dedicated to the preservation, protection and defense of the environment, the wildlife, and the natural resources of Orange County area waters, including the Santa Ana River Watershed and its receiving waters;

**WHEREAS,** Orange County Coastkeeper is referred to herein as ("Coastkeeper" or "Plaintiff");

**WHEREAS**, DBW & Associates, Inc. is an owner and/or operator of the scrap metal recycling facility located at 3250 East Frontera Street, Anaheim, California, 92806 ("Facility");

**WHEREAS,** DBW & Associates, Inc. dba DBW Metals is an owner and/or operator of the scrap metal recycling facility located at 3250 East Frontera Street, Anaheim, California, 92806;

**WHEREAS,** DBW & Associates, Inc., and DBW & Associates, Inc. dba DBW Metals are collectively referred to herein as "Defendants" or "DBW Metals";

**WHEREAS**, on July 1, 2009, Coastkeeper served Defendants, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), with a notice of intent to file suit for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA").  The notice letter alleged violations of the Clean Water Act for Defendants' discharges of pollutants into receiving waters in violation of National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS0000001 [State Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Permit");

**WHEREAS**, on September 15, 2009, Coastkeeper filed a complaint against Defendants in the United States District Court, Central District of California (Civil Case No. SACV 09-1063-DOC (MLGx)) entitled *Orange County Coastkeeper v. DBW & Associates, Inc., and DBW & Associates, Inc. dba DBW Metals* ("Complaint");

**WHEREAS**, Defendants deny all allegations of the Complaint;

**WHEREAS**, Plaintiff and Defendants (collectively referred to herein as the "Settling Parties" or "Parties") have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3.      The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.      Plaintiff has standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.      OBJECTIVES

6.      It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in Section 101 *et seq*. of the CWA, 33 U.S.C. § 1251 *et seq*., and to resolve those issues alleged by Coastkeeper in its Complaint.  In light of these objectives and as set forth fully below, Defendants agree, *inter alia*, to comply with the provisions of this Consent Decree and to comply with the requirements of the

Industrial Permit and all applicable provisions of the CWA at the Facility. Specifically, Receiving Water Limitation C(2) in the Industrial Permit requires that the Facility "not cause or contribute to the exceedance of an applicable water quality limit." Effluent Limitation B(3) of the Industrial Permit requires that Best Management Practices ("BMPs") be developed and implemented to achieve Best Available Technology ("BAT") and the Best Conventional Pollutant Control Technology ("BCT"). Defendants are required to develop and implement BMPs necessary to comply with the Industrial Permit's requirement to achieve compliance with Water Quality Standards and BAT/BCT standards. BMPs must be developed and implemented to prevent discharges or to reduce contamination in storm water discharged from the Facility sufficient to achieve the numeric limits detailed in paragraphs 12 and 13 below.

## II.  COMMITMENTS OF THE PARTIES

### A.  Installation of Treatment Train Prior to Curb Discharge Point

7.  DBW Metals currently discharges through pipes in the curb between the two driveways on East Frontera Street leading into and out of the Facility. DBW Metals will add a treatment train including a filtration device prior to discharging. The treatment train will include primary filtration, a four stage clarifier, settling tanks and in-line plumbing. For at least the first hour of any discharge, water from the treatment train will be delivered to the adjacent facility to be recycled for use in the adjacent facility's operations. Records of the volume and timing of any discharge to the adjacent facility shall be maintained by DBW Metals and made available to Coastkeeper within seven (7) days of receipt of a request for them. Discharges from the treatment train through the inline pipe(s) between the two DBW Metals driveways on East Frontera Street shall be sampled (subject to the requirements of this Consent Decree and the Industrial Permit).

### B.  Industrial Storm Water Pollution Control Measures

8.  The storm water pollution control measures and contaminant reduction provisions of this Consent Decree shall only apply to rainfall events up to and including the 5-year, 24-hour return period rain event ("Compliance Storm Event"), as defined by

the County of Los Angeles Hydrology Manual (January, 2006) with an assumed dry antecedent condition, a total of 3.4 inches of rainfall over a 24-hour period and an assumed triangular runoff hydrograph.  The Parties agree that any discharge of stormwater and/or stormwater pollutants from the Facility in connection with a rainfall event that exceeds a Compliance Storm Event is not a violation of this Consent Decree.

9.    Defendants shall, by the Effective Date of this Consent Decree, develop a BMP Plan to capture, filter, evaporate, harvest, treat and/or store to prevent off-site discharge of industrial storm water generated during rain events up to and including the Compliance Storm Event at the Facility.  The BMP Plan may contain the following measures listed herein, as appropriate, and Defendant shall develop and implement additional measures, if necessary, to reduce contamination in storm water discharged from the Facility to levels below the numeric limits set forth in Table 1 and Table 2 below:

a.    <u>Materials Storage and Industrial Activities</u>.  Placing sources of contamination in covered containers or under cover with such areas contained by berming or other containment sufficient to prevent the exposure of pollutants to storm water and non-stormwater, and to therefore prevent the discharge of pollutants;

b.    <u>Coating</u>.  Coating structural sources of contamination (e.g. galvanized building roofs and siding);

c.    <u>Sweeping</u>. Employing high efficiency sweeping in order to prevent the exposure of pollutants to storm water flows;

d.    <u>Harvesting and Storing Runoff.</u>  Constructing and maintaining on-site retention facilities (such as retention ponds or swales, baker tanks, sumps, cisterns, or dry wells/ injection wells) designed to hold and store all or a portion of the runoff generated by a 5 year return period storm event without any off-site discharge;

e.    <u>Treating Runoff</u>.  Treating runoff discharging from the site with devices such as sand filters evaluated in the Caltrans Retrofit Study ("CRS") or equivalent treatment devices at appropriate locations;

1     f.  <u>Vehicle and Equipment Maintenance and Fueling.</u>

2       i.  Conducting all vehicle and equipment maintenance and fueling

3 at the Facility on asphalt or another impermeable surface;

4       ii.  Conducting all vehicle and equipment maintenance and fueling

5 at the Facility under cover;

6       iii.  Berming or otherwise containing the surface of the area where

7 vehicle maintenance and fueling occurs in order to prevent the exposure of pollutants to

8 storm water and non-storm water, and to therefore prevent the discharge of pollutants;

9       iv.  Cleaning the maintenance and fueling area as necessary to

10 control track-off of pollutants;

11       v.  Dispensing with all petroleum products within the maintenance

12 and fueling area only;

13       vi.  Installing tire washing facilities at exit points from the Facility

14 to prevent off-site tracking from vehicles;

15       vii.  Constructing secondary containment adequate to capture all

16 drips, spills, and leaks around the vehicle fueling area and for all other areas where 55-

17 gallon drums are stored for on-site use;

18     g.  While Defendants may employ some combination of the measures

19 listed above to achieve compliance with the numeric limits in Table 2 by the end of the

20 Consent Decree period, they agree to immediately install a separation (settling) tank and

21 filtration system to manage storm water from a 5-year, 24-hour rainfall event.  The

22 Facility will also be bermed to divert stormwater onsite during Compliance Storm Events

23 through the filtration system.  These systems will be operational within thirty (30) days of

24 the Effective Date of this Decree.

25     h.  <u>Discharge Elimination:</u> Developing and implementing a plan to

26 prevent the discharge of storm water to surface waters, including a recordkeeping

27 program to track the destination of storm water that is transferred from the Facility, if

28 any.

10.     Defendants shall complete and provide the BMP Plan to Coastkeeper for review and comment within thirty (30) days of the Effective Date of this Consent Decree. Coastkeeper shall respond with comments within 30 days of receiving the BMP Plan. Within twenty-one (21) days of receiving Coastkeeper's comments, if any, Defendants shall submit a final BMP Plan to Coastkeeper, incorporating Coastkeeper's comments into the BMP Plan, or justifying in writing why any comment is not being incorporated. Defendants shall implement all BMPs in the BMP Plan at the Facility within 90 days of the Effective Date of this Consent Decree.  Any disputes as to the adequacy of the BMP Plan shall be resolved pursuant to the dispute resolution procedures of this Consent Decree, set out at Section IV below.

## C.     Reduction of Pollutants in Discharges

11.     <u>Numeric Limits and Contaminant Reduction</u>.  During the 2009/2010 Wet Season, Defendants' preparation and compliance with the BMP Plan and monitoring plan required under this Consent Decree and completing the system described in Paragraph 9(g) shall constitute compliance with this Section II.C of the Consent Decree.  Beginning in the 2010/2011 Wet Season, Defendants shall achieve compliance by demonstrating (a) that concentrations of the contaminants listed in Tables 1 and 2 discharged from the Facility are at or below the limits listed in Tables 1and 2; or (b) the pollutant concentrations in such discharges are at or below the numeric limits set forth in Table 2, or the corresponding potential mass emission reductions described in paragraphs 16-18 below are achieved.  Non-stormwater discharges from the Facility not authorized by the Industrial Permit shall be considered a breach of this Consent Decree, subject to the Force Majeure provisions set forth in Paragraph 44 below.

12.   <u>BAT/BCT and Technology Based Limits:</u>[1]  Contaminants in discharges shall not exceed the limits ("BAT/BCT Levels") in Table 1:

**Table 1: BAT/BCT and Technology Based Limits (BAT/BCT Levels)**

| Contaminant<br>(All metals are total recoverable) | Limit<br>(All but pH expressed as mg/L) |
|---|---|
| Total suspended solids | 100 |
| Copper | 0.0123 |
| Lead | 0.069 |
| Zinc | 0.11 |
| Oil and grease | 15 |
| Aluminum | 0.750 |
| Arsenic | 0.16854 |
| Cadmium | 0.0159 |
| Iron | 1 |
| Mercury | 0.0024 |
| Nickel | 1.417 |
| Silver | 0.0318 |
| Chemical oxygen demand | 120 |
| pH | 6.0-9.0 units |

---

[1] The Best Available Technology (BAT) limits were derived from the International BMP Database assembled by EPA and others for contaminants measured at a variety of BMPs, accepted into the database, and subjected to statistical analysis.  The proposed BAT limit is generally based on the maximum median pollutant discharge concentration among all reported BMP types, except hydrodynamic devices (which perform more poorly than land-based BMPs).  In some cases the Caltrans Retrofit Pilot Study results for the same BMPs were also consulted to guide the selection.  The BAT limit for oil and grease is equivalent to the widely accepted capability of a coalescing plate or equivalent oil/water separator.  Other contaminants common in scrap yard discharges are not represented at all, or are not sufficiently represented, in the database to set BAT limits.  In these cases the limits are the benchmarks in the EPA multi-sector industrial permit. Defendants are analyzing hardness when collecting samples and Defendants can adjust limits based on hardness where applicable.

13.    Water Quality Standard (WQS) Based Limits. Contaminants in discharges shall not exceed the limits in Table 2.  The chemical oxygen demand and pH limits are from the applicable Basin Plan, all other are the CTR CMC[2] limits:

**Table 2: WQS Based Limits**

| Contaminant | Limit<br>(All but pH expressed as mg/L) |
|---|---|
| Arsenic | 0.340 |
| Cadmium | 0.0043 |
| Copper | 0.013 |
| Lead | 0.065 |
| Nickel | 0.470 |
| Silver | 0.0034 |
| Zinc | 0.120 |
| Chemical oxygen demand | 30 |
| pH | 6.5-8.5 units |

14.    Action Plan for Table 1 or Table 2 Exceedances.  When sampling demonstrates discharges of storm water containing concentration of pollutants exceeding a Table 1 or 2 limit, Defendants agree to submit an action plan according to, and in compliance with, the schedule and requirements below.  The Parties agree to comply with the dispute resolution procedures set forth in Section IV below if there are any disagreements or disputes regarding any of the action plan(s) discussed below.

a.    Action Plan for Exceedences of BAT/BCT Levels. If sample results from the first storm event sampled in a Wet Season exceed Table 1 limits, then Defendants shall provide Coastkeeper with a BAT/BCT Action Plan within fourteen (14) days of Defendants' receipt of such data.  If sample results from a storm event within thirty (30)

---

[2] The CTR CMC limits are the California Toxics Rule (CTR) Criterion Maximum Concentrations (CMC) from the Federal Register, Vol. 65, No. 97, May 18, 2000.  Defendant shall measure dissolved as well as total recoverable metals.  In general, freshwater limits for metals depend on water hardness. Defendants are analyzing hardness when collecting samples and Defendants can adjust limits based on hardness where applicable.

days of submission of the first BAT/BCT Action Plan exceed Table 1 limits, Defendants are not obligated to submit a BAT/BCT Action Plan to address these exceedences, but must include measures to address these exceedences in a BAT/BCT Action Plan due by June 30 following the Wet Season.  If sample results from the next storm event sampled in a Wet Season occurring before March 1 (not including those from an event occurring within thirty (30) days of submission of the first BAT/BCT Action Plan) exceed Table 1 limits, Defendants shall provide a BAT/BCT Action Plan within fourteen (14) days of Defendants' receipt of such data.  If any other sample results exceed a Table 1 limit Defendants shall submit a BAT/BCT Action Plan by June 30 following each Wet Season, which may be incorporated into the WQS Action Plan described below.  Any BAT/BCT Action Plan submitted pursuant to this paragraph shall include at a minimum (1) the identification of the pollutant(s) discharged in excess of the BAT/BCT Levels, (2) an assessment of the source of each pollutant exceedance, (3) the identification of additional BMPs that will be implemented to achieve compliance with the BAT/BCT Levels set forth in Table 1, and (4) time schedules for implementation of the proposed BMPs. Coastkeeper shall have fourteen (14) days upon receipt of Defendants' BAT/BCT Action Plan to provide Defendants with comments.  Defendants shall have twenty-one (21) days from the date Coastkeeper comments on Defendants' BAT/BCT Action Plan to implement any additional non-structural or structural BMPs recommended by Coastkeeper.  Defendants shall provide a written explanation if Defendants refuse to develop and/or implement any of Coastkeeper's recommended additional BMPs.  If any structural BMPs require any agency approval, then Defendants shall contact Coastkeeper to request an extension of the deadline to implement the structural BMPs requiring agency approval.  Coastkeeper's consent to Defendants' requested extension shall not be unreasonably withheld.  Defendants shall notify Coastkeeper in writing when the Action Plan has been implemented.

b.  <u>WQS Action Plan</u>.  Defendants shall provide Coastkeeper with a WQS Action Plan by June 30 following each Wet Season if storm water sampling data

demonstrating an exceedance of a WQS Level at the Facility.  The objective of the WQS Action Plan is to set forth additional BMPs designed to achieve compliance with Table 2 limits.  The Action Plan shall include at a minimum (1) the identification of the pollutant(s) discharged in excess of the WQS; (2) an assessment of the source of the pollutant; (3) the identification of additional BMPs that will be implemented to achieve compliance with the applicable WQS; and (4) time schedules for implementation of the proposed structural and non-structural BMPs.  Coastkeeper shall have twenty-one (21) days upon receipt of Defendants' WQS Action Plan to provide Defendants with comments.  Defendants shall have twenty-one (21) days from the date Coastkeeper comments on Defendants' Action Plan to implement any additional non-structural or structural BMPs.  Defendants shall provide a written explanation if Defendants refuse to develop and/or implement any of Coastkeeper's recommended additional BMPs.  If any structural BMPs require any agency approval, then Defendants shall contact Coastkeeper to request an extension of the deadline to implement the structural BMPs requiring agency approval. Coastkeeper's consent to Defendants' requested extension shall not be unreasonably withheld.  Defendants shall notify Coastkeeper in writing when the Action Plan has been implemented.

15.   <u>Action Plan for Year 4 Wet Season</u>. If at the end of the 2011/2012 Wet Season, storm water sample results demonstrate that Defendants continue to discharge storm water and/or non-stormwater containing pollutants exceeding the limits set forth in Tables 1 and/or 2, the Parties shall meet and confer by July 1, 2012 to discuss the sample results, current BMPs, and to devise a mutually agreeable action plan ("Year 4 Action Plan").  Within thirty (30) days of meeting and conferring, Defendants will develop and submit the Year 4 Action Plan to Coastkeeper.  Coastkeeper will provide comments on the Year 4 Action Pan within thirty (30) days of receipt of the plan.  DBW Metals shall revise the Year 4 Action Plan to include Coastkeeper's comments.

16.   <u>Mass Emission Reduction for Contaminants with WQS Based Limits.</u>  If any sampling demonstrates discharges of stormwater containing a concentration of pollutants

exceeding the WQS Based Limits in Table 2, Defendants shall have the opportunity to demonstrate within 180 days that the potential total mass emission of the contaminant has been reduced through a combination of decreases in its concentrations and reductions of the volume of the runoff discharged from industrial activities.  Defendants agree to submit a plan for additional mass emission contaminant reduction to Coastkeeper for review and comment as soon as practicable and in any case within 30 days of receipt of sampling data demonstrating an exceedance.  Coastkeeper shall provide comments, if any, to the Defendants within 30 days of receipt.  Defendants shall incorporate Coastkeeper's comments in order to reduce the mass emission of the contaminant and initiate implementation of the reduction within 30 days of receipt of Coastkeeper comments and complete implementation within 60 days of receipt of Coastkeeper's comments, or as otherwise agreed between Coastkeeper and Defendants.  If any of Coastkeeper's comments are not adopted and incorporated, Defendants shall justify in writing why any comment is not being incorporated within 30 days of receiving the comments.  Any disputes as to the adequacy of the mass emission reduction plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out at Section IV below.

17.     The baseline for mass emissions reductions calculations, consisting of the geometric mean of all concentrations of stormwater contaminants sampled by Coastkeeper and sampled by Defendant prior to the Effective Date, is as follows:

**Table 3:  Geometric Mean of Contaminants That Exceed Numeric Limits**

| Contaminant | Geometric Mean |
|---|---|
| Copper | 0.824 mg/L |
| Lead | 0.331 mg/L |
| Zinc | 0.783 mg/L |
| Oil and Grease | 7.9 mg/L |
| Chemical Oxygen Demand | 81 mg/L |
| Total Suspended Solids | 26 mg/L |

For the contaminants listed in Table 3, the demonstration that the potential total mass emission of a contaminant has been reduced shall be made as follows:

    a.    Determine the geometric mean of all concentrations of the contaminant measured before and after the Effective Date of the Consent Decree;

    b.    Determine the site surface area discharging runoff containing the contaminant before and after this Effective Date;

    c.    Multiply the geometric mean of concentrations and site surface area discharging before and after this Effective Date to obtain indicators of potential mass emission before and after this Effective Date; and

    d.    Show that the potential mass emission of the contaminant has decreased by the amount(s) specified in Table 4:

**Table 4: Mass Emission Decrease Requirements for Table 3 Contaminants**

| If the concentration exceeds the WQS Based Limit by: | Then the potential total mass emission shall be reduced by: |
|---|---|
| 1-100% (i.e., up to 2 times the limit) | 50% |
| 101-200% (i.e., up to 3 times the limit) | 75% |
| 201-300% (i.e., up to 4 times the limit) | 95% |

18.    For the Contaminants listed in Table 5 below, for which inadequate baseline data is currently available for such Contaminants' inclusion in Table 3, or for which the geometric means are below the applicable WQS Based Limits set out in Table 2, the following method shall be used to assess compliance with the WQS Based Limits described above for any discharge point where storm water discharges occur during storm events smaller than the Compliance Storm Event.

    a.  Based on existing site conditions (100 percent impervious surfaces and no storm water infiltration or diversion) and the amount of rainfall that falls on

the Facility during each of the monitored storm events described, the volume of water that would have discharged from the Facility prior to installation of the filtration and/or diversion measures shall be calculated;

b. Using the WQS Based Limits described above, the mass of "allowable" pollutants will be calculated (volume of water assuming no filtration/diversion multiplied by the WQS Based Limits) for each listed constituent;

c. The actual contaminant mass discharged for each of the pollutants listed above will be calculated (volume of water actually discharged multiplied by the analytical results for storm events where discharges occur);

d. For each of the monitored storm events, the calculated mass of actual contaminants discharged under subparagraph (c) above will be compared to the mass of allowable contaminants calculated under subparagraph (b) above.

**Table 5: Contaminants not in Table 3**

| Contaminant | Geometric Mean[3] |
|---|---|
| Arsenic | Insufficient Data |
| Cadmium | Less than Table 2 |
| Silver | Insufficient Data |
| Nickel | Less than Table 2 |

**D.      Sampling, Monitoring, Inspecting, and Reporting**

19.    <u>Sampling Program.</u>  Within thirty (30) days of the Effective Date, Defendants shall revise their monitoring and reporting plan (M&RP) to meet the

---

[3]  The references in Table 5 to "Insufficient Data" indicate that the combined storm water discharge sampling data currently available to Coastkeeper lack at least three sample results that are above the reporting limit for that contaminant from which to calculate the geometric mean.

requirements of this Consent Decree.  All storm water discharge locations shall be sampled at the Facility.  Storm water samples collected must represent the discharge at the point it leaves the Facility.  Additionally, sampling of stored or contained storm water shall occur at the time the stored or contained storm water is released.  The M&RP shall be revised to include sampling at all new or additional discharge points created in the future.

20.    Coastkeeper's Review of Revised M&RP.  Defendants agree to submit the M&RP to Coastkeeper for review and comment as soon as it is completed but in any event no later than thirty (30) days from the Effective Date of this Consent Decree. Coastkeeper shall provide comments, if any, to the Defendants within thirty (30) days of receipt of the M&RP. Defendants shall incorporate Plaintiff' comments into the M&RP, or shall justify in writing why any comment is not incorporated within twenty-one (21) days of receiving comments.  Any disputes as to the adequacy of the M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

21.    Sample Analysis and Sample Frequency.  Beginning with the 2009/2010 Wet Season (defined as October 1- May 31), Defendants shall collect storm water samples from each discharge location from each storm event at the Facility. In years 2-5 of the Decree, DBW Metals agrees to sample every storm event up to five (5) storm events per Wet Season.  Until every storm event up to five (5) storm events are sampled, any water from a storm event that is not transferred to the adjacent property shall be sampled prior to discharge, unless the storm event begins during after operating hours and the discharge becomes necessary before operating hours recommence.  In the latter case, the discharge shall be sampled if it is still ongoing when operating hours recommence.  Operating hours are defined as 7 a.m. to 5 p.m. Monday through Friday and 8 a.m. to 1:30 p.m. Saturday.

22.    Defendants shall analyze the samples for the constituents identified in Table 1 and Table 2.  A California State certified laboratory shall perform all sample chemical

analyses.  Defendants shall select laboratories and analytical limits such that, at a minimum, the method detection limits ("MDLs") shall be below both the Table 1 and Table 2 Limits set forth herein.  In addition, Defendants shall perform sampling as required by the Industrial Permit for the Facility.

###### E.    Storm Water Pollution Prevention Plan

23.    SWPPP Revisions.  Within thirty (30) days of the Effective Date of this Consent Decree, Defendants agree to revise the SWPPP currently in effect at the Facility to incorporate all storm water pollution prevention measures and other requirements set forth in this Consent Decree and/or the Industrial Permit.  Specifically, the SWPPP shall include a description of all industrial activities and corresponding potential pollution sources and, for each potential pollutant source, a description of the potential pollutants from the sources.  The SWPPP shall also identify BMPs (and their implementation dates) designed to achieve compliance with Numeric Limits set forth in Table 1 and Table 2. Defendants shall revise the SWPPP as necessary to incorporate additional BMPs developed pursuant to this Consent Decree.

24.    Coastkeeper's Review of Revised SWPPP. Defendants shall submit the revised SWPPP to Coastkeeper for review and comment as soon as it is completed but in any event no later than thirty (30) days from the Effective Date of this Consent Decree. Within thirty (30) days of Coastkeeper's receipt of the revised SWPPP, Coastkeeper shall provide Defendants with comments and suggestions, if any, concerning the revisions to the SWPPP.  Defendants shall incorporate or shall justify in writing why any comment is not incorporated within twenty-one (21) days of Defendants' receipt of Coastkeeper's comments on the revised SWPPP and re-issue the SWPPP.  Any disputes as to the adequacy of the SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

###### F.    Employee Training

25.    Within thirty (30) days of the Effective Date, Defendants shall develop a training program, including any materials needed for effectiveness, and shall provide

training for employees as follows:

a.   <u>Non-Storm Water Discharge Training.</u>  Defendants shall conduct training on the Industrial Permit's prohibition of non-storm water discharges so that employees know what non-storm water discharges are and how to avoid them.  Such training shall be specified in the SWPPP;

b.   <u>BMP Training</u>.  Defendants shall provide training to all employees responsible for BMP implementation and maintenance.  Training shall be provided by a private consultant or representative of Defendants familiar with the Industrial Permit requirements and shall be repeated as necessary to ensure that all such employees are familiar with the Industrial Permit and SWPPP requirements.  Defendants shall maintain training records to document compliance with this paragraph, and shall provide Coastkeeper with a copy of these records within fourteen (14) days of receipt of a written request;

c.   <u>Sampling Training</u>.  Defendants shall provide training to all individuals performing sampling pursuant to the Industrial Permit at the Facility.  All employees shall thereafter be trained prior to becoming responsible for conducting sampling activities.  The training shall be provided by a private consultant or representative of Defendants familiar with the Industrial Permit requirements and shall be repeated as necessary to ensure Industrial Permit compliance.  Defendants shall maintain training records to document compliance with this paragraph, and shall provide Coastkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

d.   <u>Visual Observation Training.</u>  Defendants shall provide additional training to all individuals performing visual observations pursuant to the Industrial Permit at the Facility.  The training will be provided by a private consultant or representative of Defendants and shall be repeated as necessary to ensure Industrial Permit compliance.  All new staff will receive this training before assuming responsibilities for implementing the SWPPP.  Defendants shall maintain training records to document compliance with

this paragraph, and shall provide Coastkeeper with a copy of these records within fourteen (14) days of a written request.

### G.    Compliance Monitoring

26.    <u>Site Inspections.</u>  Coastkeeper, Dr. Richard Horner, or an alternative water quality engineer identified by Coastkeeper, accompanied by Coastkeeper's attorney or other representative, may conduct up to two (2) site inspections at the Facility during the first year following the Effective Date of the this Consent Decree.  The number and frequency of site inspections in the following years will be based on whether Defendants have achieved and remain in compliance with the Consent Decree.  The Parties agree to negotiate in good faith to schedule inspections in following years, with the understanding that inspections are a necessary part of evaluating compliance and that Orange County Coastkeeper is entitled to reasonable compensation for these activities.  Site inspections shall occur during normal business hours.  Coastkeeper shall provide Defendants' with as much notice as possible, but at least twenty-four (24) hours notice during the Wet Weather season and forty-eight (48) hours notice during the dry season prior to each inspection.  Notice will be provided by phone and electronic mail to the individuals listed in paragraph 48 below.  During site inspections, Coastkeeper and/or its representatives shall be allowed access to the Facility's SWPPP and monitoring records and to all monitoring reports and data for the Facility.  During site inspections, Coastkeeper and/or its representatives may collect samples of storm water discharges at the Facility.

27.    <u>Compliance Monitoring and Oversight.</u>  Defendants agree to help defray Coastkeeper's reasonable costs incurred in conducting site inspections and compliance monitoring for the first year following the Effective Date of this Consent Decree by making a payment of Five Thousand Dollars ($5,000.00).  This payment shall be made within sixty (60) days of the Effective Date of this Decree.  This payment shall be made payable to:

**Lawyers for Clean Water Attorney Client Trust Account**

and shall be sent certified mail or overnight delivery and mailed to Lawyers for Clean Water, Inc., 1004 A O'Reilly Avenue, San Francisco, California 94129.  The Parties agree to negotiate in good faith the funding for compliance monitoring, including additional site inspections, in following years, with the understanding that such monitoring is a necessary part of evaluating Defendants' compliance with this Consent Decree.  Defendants specifically agree that Orange County Coastkeeper is entitled to reasonable compensation for compliance monitoring.  Coastkeeper shall provide copies of any invoicing for site inspections and compliance oversight within thirty (30) days of receiving a written request by Defendants.

28.   <u>Reporting</u>.  During the life of this Consent Decree, on a monthly basis, Defendants shall provide Coastkeeper with a copy of all compliance and monitoring data, including inspection reports, related to the Facility.  During the life of this Consent Decree, Defendants shall provide Coastkeeper with all laboratory analyses related to the Facility within seven (7) days of Defendants' receipt of such information.

29.   <u>Document Provision</u>.  During the life of this Consent Decree, Defendants shall copy Coastkeeper on all documents related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality.  Such reports and documents shall be provided to Coastkeeper concurrently as they are sent to the agencies and/or municipalities.  Any correspondence related to water quality received by DBW Metals from any regulatory agency shall be provided within three (3) business days of receipt by DBW Metals.

**H.   Environmental Projects and Fees and Costs**

30.   <u>Environmental Mitigation Project</u>.  Defendants agree make a payment of Fifteen Thousand Dollars ($15,000) to the Public Interest Green Fund at the Orange County Community Foundation, 30 Corporate Park, Suite 410, Irvine, California 92606, www.oc-cf.org.  The Public Interest Green Fund is a non-profit organization that uses its funds to support environmental advocacy by area law students on behalf of non-profit organizations, either via stipends or scholarships.  This mitigation payment shall be used

to support student advocacy in projects that reduce or mitigate the impacts of storm water pollution in Orange County.  Defendants shall make the mitigation payment within sixty (60) days of the Effective Date and mail the payment via certified mail or overnight delivery to the Public Interest Green Fund.  Defendants shall provide Coastkeeper with a copy of such payment.

31.  <u>Coastkeeper's Fees and Costs</u>.  Defendants agree to partially reimburse Coastkeeper for their investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter in the amount of Fifty-One Thousand Five Hundred Dollars ($51,500.00).  Defendants shall make this payment within sixty (60) days of the Effective Date.  All such payments shall be made payable to:

**Lawyers for Clean Water Attorney-Client Trust Account**

and delivered by certified mail or overnight delivery to:  Lawyers for Clean Water, Inc., 1004 A O'Reilly Avenue, San Francisco, California 94129.

32.  <u>Stipulated Payment</u>. Defendants shall make a remediation payment of One Thousand Dollars ($1,000) for each missed deadline included in or contemplated by this Consent Decree, unless the missed deadline results from a Force Majeure Event. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by Defendants' discharges and shall be awarded to the Environmental Mitigation Project recipient identified in paragraph 30 above.  Defendants agree to make the stipulated payment within thirty (30) days of a missed deadline and mail the payment via certified mail or overnight delivery.  Defendants shall provide Coastkeeper with a copy of each such payment.

### I.   Commitments of Plaintiff

33.  Plaintiff shall submit this Consent Decree to the United States Environmental Protection Agency and the United States Department of Justice ("DOJ") within three (3) days of the final signature of the Parties for agency review consistent with 40 C.F.R. §135.5.  The agency review period expires forty-five (45) days after

1   receipt by both agencies, as evidenced by the certified return receipts, copies of which

2   shall be provided to Defendants if requested.  In the event that EPA or DOJ object to

3   entry of this Consent Decree the Parties agree to meet and confer to attempt to resolve the

4   issue(s) raised by EPA or DOJ.

5        34.    Plaintiff shall file this Consent Decree with the District Court within three

6   (3) days of the Effective Date. Coastkeeper is responsible for notifying Defendants of the

7   District Court's entry of the Order dismissing these claims with prejudice.  Such

8   notification can be satisfied by the Central District of California's Case

9   Management/Electronic Case Filing ("CM/ECF") notification to the Parties that the

10  Order was executed and entered by the District Court.

11  **III.    EFFECTIVE DATE AND TERMINATION DATE**

12       35.    The term "Effective Date," as used in this Consent Decree, shall mean the

13  last date for the United States Department of Justice and the United States Environmental

14  Protection Agency ("Federal Agencies") to comment on the Consent Decree, i.e., the

15  45th day following the United States Department of Justice and United States

16  Environmental Protection Agency's receipt of the Consent Decree, or the date on which

17  the Federal Agencies provide notice that they require no further review and the Court

18  enters the final Consent Decree, whichever occurs earlier.

19       36.    This Consent Decree will terminate on its own terms five (5) years from the

20  Effective Date.

21  **IV.    DISPUTE RESOLUTION**

22       37.    This Court shall retain jurisdiction over this matter for the purposes of

23  adjudicating all disputes among the parties that may arise under the provisions of this

24  Consent Decree.  The Court shall have the power to enforce this Consent Decree with all

25  available legal and equitable remedies, including contempt.

26       38.    <u>Meet and Confer</u>.  A party to this Consent Decree shall invoke the dispute

27  resolution procedures of this Section by notifying all other Parties in writing of the

28  matter(s) in dispute and of the party's proposal to resolve the dispute under this Section.

The Parties shall then meet and confer in an attempt to resolve the dispute no later than ten (10) calendar days from the date of the notice.

39.    If the Parties cannot resolve a dispute by the end of the meet and confer process, the party invoking the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California.  The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

40.    If Coastkeeper initiates a motion or proceeding before the Court to enforce the terms and conditions of this Consent Decree, Coastkeeper shall be entitled to recover reasonable fees incurred to enforce the terms of this Consent Decree consistent with the provisions of Sections 505 and 309 of the CWA, 33 U.S.C. §§ 1365, 1319.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

41.    In consideration of the above, upon the Effective Date of this Consent Decree, the Parties hereby fully release, except for claims for the Defendants' failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all alleged CWA violations claimed in the Complaint, up to and including the Effective Date of this Consent Decree.

42.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendants.

43.    Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

44.   <u>Force Majeure</u>. Defendants shall notify Coastkeeper pursuant to the terms of this paragraph, when implementation of the requirements set forth in this Consent Decree, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good-faith efforts of Defendants, due to circumstances beyond the reasonable control of Defendants or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendants.  Any delays due to Defendants' failure to make timely and bona fide applications and to exercise diligent efforts to obtain any necessary permits, or due to normal inclement weather shall not, in any event, be considered to be circumstances beyond DBW Metals' control.

a.  If Defendants claim impossibility, they shall notify Coastkeeper in writing within twenty-one (21) days of the date that DBW Metals first knew of the event or circumstance that caused or would cause a violation of this Consent Decree or the date DBW Metals should have known of the event or circumstance by the exercise of due diligence.  The notice shall describe the reason for the nonperformance and specifically refer to this Section.  It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by DBW Metals to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. DBW Metals shall adopt all reasonable measures to avoid and minimize such delays.

b.  The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of DBW Metals, due to circumstances beyond the control of DBW Metals that could not have been reasonably foreseen and prevented by the exercise of due diligence by DBW Metals, new deadlines shall be established.

c.  If Coastkeeper disagrees with DBW Metals' notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV.  In such proceeding, DBW Metals shall bear the burden of proving that any

1    delay in performance of any requirement of this Consent Decree was caused or will be

2    caused by force majeure and the extent of any delay attributable to such circumstances.

3    **VI.    MISCELLANEOUS PROVISIONS**

4          45.    <u>Construction</u>.  The language in all parts of this Consent Decree shall be

5    construed according to its plain and ordinary meaning, except as to those terms defined in

6    the Industrial Permit, the Clean Water Act, or specifically herein.

7          46.    <u>Choice of Law</u>.  The laws of the United States shall govern this Consent

8    Decree.

9          47.    <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence

10   of this Consent Decree is held by a court to be unenforceable, the validity of the

11   enforceable provisions shall not be adversely affected.

12         48.    <u>Correspondence</u>.  Except as otherwise specifically stated herein, all notices

13   required herein or any other correspondence pertaining to this Consent Decree shall be

14   sent by first-class mail and electronic mail as follows:

15         If to Plaintiff:

16
17         Daniel Cooper
           Drevet Hunt
18         Lawyers for Clean Water
           1004 A O'Reilly Ave
19         San Francisco, CA 94129
           daniel@lawyersforcleanwater.com
20         drev@lawyersforcleanwater.com

21
           With copies to:
22
23         Orange County Coastkeeper
           Garry Brown
24         3151 Airway Ave # F110
           Costa Mesa, CA 92626-4621
25         garry@coastkeeper.org

26
27         If to Defendant:

28

---

William W. Funderburk, Jr.
Ruben A. Castellon, Esq.
Castellon & Funderburk LLP
811 Wilshire Blvd. Suite 1025
Los Angeles, CA 90017
wfunderburk@candffirm.com
rcastellon@ candffirm.com

With copies to:

DBW & Associates, Inc.
Attn: David Williams
3250 East Frontera Street
Anaheim, CA 92806
david@dbwmetals.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail.  Any change of address or addresses shall be communicated in the manner described above for giving notices.

49.   <u>Effect of Consent Decree</u>.  Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

50.   <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

51.   <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

52.   <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

53.   <u>Integration Clause</u>.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

54.   <u>Authority</u>.  The undersigned representatives for Plaintiff and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

55.   The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

56.   The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, the Defendants do not admit liability for any purpose as to any allegation or matter arising out of this Action.

The undersigned representatives for Coastkeeper and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree and that this Consent Decree binds that party.

**IT IS SO ORDERED:**

Date: March 2, 2010

*David O. Carter*

_____

Honorable David O. Carter
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.

LAWYERS FOR CLEAN WATER, INC.

Dated:        January __, 2010        _____

Daniel Cooper
Drevet Hunt
Lawyers for Clean Water, Inc.
Attorneys for Plaintiff

ORANGE COUNTY COASTKEEPER

Dated:        January __, 2010        _____

Garry Brown
Orange County Coastkeeper

CASTELLON & FUNDERBURK LLP

Dated:        January __, 2010        _____

Ruben A. Castellon
Attorney for Defendants

DBW & ASSOCIATES, INC.

Dated:        January __, 2010        _____

David B. Williams, Owner
DBW & Associates, Inc.